IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

| | | |
|---|---|---|
| JOHN AND THERESA SOPHOCLEUS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 3:00cv652-MHT |
| ALABAMA DEPARTMENT OF TRANSPORTATION, et al., | ) ) ) | (WO) |
| Defendants. | ) | |

OPINION

Plaintiffs John and Theresa Sophocleus bring this lawsuit against defendants Margie Champion Todd Hopper, Paul Bowlin, Jimmy Butts, and DeJarvis Leonard.[1] The Sophocleuses claim that the defendants, who are employees of the Alabama Department of Transportation, took their home for private use from January through August 1999, in violation of the Fifth and Fourteenth

_____

1. This court has dismissed claims against some defendants initially named in the complaint: the Alabama Department of Transportation (dismissed Feb. 18, 2003); Mack Roberts and Rhonda Ashworth (Mar. 10, 2003); and Reese & Howell (Feb. 22, 2006). The Sophocleuses' claims under 42 U.S.C. § 1985 have also been dismissed (Feb. 22, 2006).

Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983. They also claim that, during this period, the defendants committed the state torts of trespass, invasion of privacy, and outrage. Jurisdiction over the federal claim is proper under 28 U.S.C. §§ 1331 and 1343; jurisdiction for the state-law claims is proper under 28 U.S.C. § 1367(a).

This case is before the court on the defendants' motions for summary judgment. The motions will be granted.

## I. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine

issue exists for trial.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).   In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II. PROCEDURAL HISTORY AND FACTS

This case arises out of the State of Alabama's plan to build a road that required taking the Sophocleuses' property.[2]   On May 19, 1998, the State filed a petition in state-probate court to condemn the Sophocleuses' property and several other tracts of land.   The condemnation petition alleged that the acquisition of this property was in the public interest and necessary for public use as a right-of-way for the construction and maintenance of a public road.   On August 3, the

_____

2.   The factual background in this case has been recited in greater detail in Sophocleus v. Alabama Dep't of Transp., 305 F. Supp.2d 1238 (M.D. Ala. 2004) (Thompson, J.).

3

probate court entered a decree of condemnation that awarded the Sophocleuses $ 85,000 for their property. On September 7, the Sophocleuses appealed the probate court's order to state-circuit court, and the parties began discovery in preparation for a de novo trial under 1975 Ala. Code § 18-1A-283.

On December 7, 1998, during the discovery period for the condemnation suit, the State filed a separate suit in state court seeking to evict the Sophocleuses from the property. In response to the eviction petition, John Sophocleus filed an affidavit on December 21, alleging that the Transportation Department intended to use his house as an office rather than razing it to build the road. At the January 1999 trial in the eviction proceeding, witnesses testifying on behalf of the Transportation Department stated, in contrast, that the property had to be razed immediately as part of the road project. That same day, the court issued a writ of possession, evicting the Sophocleuses and granting possession of

4

the property to the State.   The Sophocleuses did not appeal and surrendered possession one week later.

On August 11, 1999, the Sophocleuses filed an "Amended Appeal" to the condemnation action--which was still in discovery--asserting that the State's claimed public use was untrue.   They argued that the house was still standing and that the Transportation Department had thus misled the court in January by stating that the Sophocleuses' property must be razed immediately. In support of their argument that the property was not needed for the road construction, they claimed that other nearby landowners were permitted to remain on their property, despite the supposed immediate public need for it.   Additionally, John Sophocleus had already alleged, in his eviction-proceeding affidavit, that Transportation Department officials intended to use his house for work purposes and not for actually building the road.

The parties settled the case the day before the condemnation proceeding was scheduled for a de novo

5

trial in state circuit court.  The Sophocleuses agreed to the condemnation, and the State agreed to pay them $ 145,000.  On September 23, 1999, the state court accepted the parties' settlement; found that the allegations of the condemnation petition were true; and entered an order of condemnation.  The Sophocleuses' house was razed in November 1999, and Highway 280 now occupies the land where the house used to be.

The Sophocleuses filed this federal lawsuit on May 19, 2000.  They alleged that they were forced out of their home by the defendants from January to August 1999 so that contractors could use the house as private living quarters and an office.  They alleged, as evidence of private use, that they and others had gone past the house in the evening and seen the TV on, heard loud music, seen private vehicles being worked on in the shop, and seen people playing football or riding four-wheelers in the front yard.  They claimed that this private use of their property, which was taken for public use, violated their Fifth and Fourteenth

Amendment rights as well as certain rights under state law.

The Sophocleuses' suit then began its federal-court saga. On January 26, 2004, pursuant to the Rooker-Feldman doctrine (which derives its name from Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983)), this court found that it lacked subject-matter jurisdiction to hear the Sophocleuses' claims and dismissed the case. Sophocleus v. Ala. Dep't of Transp., 305 F. Supp.2d 1238, 1251 (M.D. Ala. 2004) (Thompson, J.). The Court of Appeals for the Eleventh Circuit affirmed, Sophocleus v. Alabama, 116 F. App'x 246 (11th Cir. Aug. 2, 2004). The Sophocleuses petitioned for a writ of certiorari, and the Supreme Court granted the petition and vacated the appellate-court judgment for reconsideration in light of Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005), its then-recent decision clarifying the Rooker-Feldman doctrine. Sophocleus v. Ala. Dep't of

7

<u>Transp.</u>, 546 U.S. 801 (2005).   The Eleventh Circuit then remanded the case to this court for further proceedings.   <u>Sophocleus v. Ala. Dep't of Transp.</u>, 170 F. App'x 608 (11th Cir. 2005).

As this case now stands, only four defendants remain: DeJarvis Leonard, Margie Champion Todd Hopper, Paul Bowlin, and Jimmy Butts, all of whom are employees of the Transportation Department and are being sued in their individual capacities.


## III. DISCUSSION

The most basic statement of the <u>Rooker</u>-<u>Feldman</u> doctrine is that "appellate jurisdiction to reverse or modify a state-court judgment is lodged, initially by § 25 of the Judiciary Act of 1789, 1 Stat. 85, and now by 28 U.S.C. § 1257, exclusively in th[e Supreme Court].   Federal district courts ... are empowered to exercise original, not appellate, jurisdiction." <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280,

283 (2005).[3]   Despite this uncontroversial statement, the Supreme Court in Exxon expressed concern that the doctrine was ballooning past its original narrow boundaries and depriving lower federal courts of their proper concurrent jurisdiction.   Id.   The Court therefore announced a return to the original "narrow ground" of the Rooker-Feldman doctrine.   Id. at 284. This court must now apply the clarified post-Exxon doctrine to the Sophocleuses' claims.

### A. Rooker-Feldman

### 1. Foundation of the doctrine

In Rooker, a party to a lawsuit--after losing in a state supreme court and failing to obtain Supreme Court review--filed an action in federal district court

---

3.   As explained in Noel v. Hall, 341 F.3d 1148, 1155 (9th Cir. 1993), two exceptions to this rule are provided by statute.   First, a federal district court may hear petitions for habeas corpus from prisoners claiming that the state court erred in applying federal law.   28 U.S.C. § 2254.   Second, federal bankruptcy courts have the power to challenge or discharge state-court judgments.   See, e.g., 11 U.S.C. §§ 727, 1141, 1328.

seeking to declare the state judgment null and void. 263 U.S. at 414-15.  The Court construed the federal court action as an improper attempt to obtain appellate review of the state decision in a lower federal court. Id. at 416.  It held that only the Supreme Court may entertain a proceeding to reverse or modify a state-court judgment, and it thus concluded that the federal district court lacked jurisdiction to hear the case. Id. at 415-16.

In Feldman, the plaintiff petitioned the District of Columbia Court of Appeals, the equivalent of the District of Columbia's supreme court, to waive a bar admission rule that prevented his admission to the D.C. bar.  460 U.S. at 467-73.  When the D.C. court denied his waiver requests, the plaintiff sued in federal district court.  He sought a declaration that the court's decision to deny waiver violated the Constitution, as well as a declaration that the rule he wished waived was itself unconstitutional.  Id. at 469 n.3, 472-73.  The Supreme Court held that the former

claim impermissibly sought direct federal-court review of the state-court judgment.  In the latter claim, however, the court did have jurisdiction because the plaintiffs sought review of the constitutionality of a "rule promulgated in a <u>non-judicial proceeding</u>."  <u>Id</u>. at 486 (emphasis added).  The nature of the proceeding made all the difference: lower courts are barred from reviewing only state <u>judicial</u> decisions.

<u>Feldman</u>'s greatest impact has come from a puzzling phrase in the opinion, in which the Court noted that the plaintiff's claim against the bar rule as applied to him was "<u>inextricably intertwined</u> with the District of Columbia Court of Appeals' decisions, in judicial proceedings, to deny the respondents' petitions."  <u>Id</u>. at 486-87 (emphasis added).  With this phrase, the Court appeared to extend the <u>Rooker</u>-<u>Feldman</u> doctrine to prohibit lower federal-court jurisdiction not just if the federal decision would override the state judgment, but also if the state and federal claims are somehow "inextricably intertwined."  The Circuit Courts of

11

Appeals differed in their interpretation of this phrase, resulting in four general approaches to it. See generally Allison B. Jones, Note, The Rooker-Feldman Doctrine: What Does It Mean To Be Inextricably Intertwined?, 56 Duke L.J. 643, 661-674 (2006). Some of these approaches to the phrase dramatically expanded the contours of the doctrine, Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 86 (2d Cir. 2005), and are now impermissible after Exxon.

### 2. Expansion of the doctrine since Feldman on the basis of "inextricably intertwined"

The broadest interpretation of "inextricably intertwined" rendered Rooker-Feldman functionally equivalent to res judicata. In Moccio v. New York State Office of Court Administration, 95 F.3d 195, 199-200 (2d Cir. 1996), for example, this phrase meant that, "[i]f the precise claims raised in a state court proceeding are raised in the subsequent federal proceeding, Rooker-Feldman plainly will bar the

12

action." Id. at 198-99.  As will be described in the

next section, Exxon barred this approach.

Another method has some overlap with issue

preclusion, but it is narrower and more nuanced than

the res-judicata approach.  Under this interpretation,

used by the Eleventh Circuit prior to Exxon, federal

courts had no jurisdiction under Rooker-Feldman "if the

federal claim succeeds only to the extent that the

state court wrongly decided the issues before it."

Goodman ex rel. Goodman v. Sipos, 259 F.3d 1327, 1332

(11th Cir. 2001).[4]  This court used that formulation in

its prior decision on the Sophocleuses' claims.

Sophocleus, 305 F. Supp.2d at 1246 (giving the

Sophocleuses relief would require undermining the

conclusions of the state court).  Under this

---

4.  Several of the courts using this approach cite
its source, Justice Marshall's concurrence in Pennzoil
Co. v. Texaco, Inc., 481 U.S. 1 (1987):  "[I]t is
appropriate, as a first step, that the federal claim is
inextricably intertwined with the state-court judgment if
the federal claim succeeds only to the extent that the
state court wrongly decided the issues before it."  Id.
at 25.

interpretation, federal courts are essentially precluded from deciding whatever "issues" could undermine the basis for the state-court decision, even if the claim does not attack the state-court judgment itself. This approach, too, was ultimately rejected by the Court in <u>Exxon</u>.

The third method of applying <u>Rooker</u>-<u>Feldman</u>, articulated in the Seventh Circuit case of <u>GASH Associates v. Village of Rosemont</u>, 995 F.2d 726 (7th Cir. 1993), is considerably narrower than the first two. Its formulation, quoted approvingly by the Supreme Court in <u>Exxon</u>, 544 U.S. at 293, poses one decisive question: "[I]s the federal plaintiff seeking to set aside a state judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party?" <u>GASH</u>, 995 F.2d at 728.

The final method of interpreting "inextricably intertwined" prior to <u>Exxon</u> is the Ninth Circuit's unique two-part test, which <u>Noel v. Hall</u>, 341 F.3d

14

1148, 1164 (9th Cir. 2003), derived from both GASH and a close tracking of the Supreme Court's approach in Feldman.  First, the court determines whether a claim constitutes a "forbidden de facto appeal" attempting to override the state-court judgment.  Id. at 1158.  A de facto appeal arises when the federal plaintiff "complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court," id. at 1163.  And as such, a de facto appeal is identical to what the GASH test also prohibits.

The Noel test departs from GASH by adding a slight additional step.  Only if a de facto appeal is present may the court consider that the plaintiff "may not seek to litigate an issue that is 'inextricably intertwined' with the state court decision from which the forbidden de facto appeal is brought."  Id. at 1158.  This method serves to prevent a federal plaintiff "from making an end-run around the rule against de facto appeals," Kougasian v. TMSL, 359 F.3d 1136, 1142 (9th Cir. 2004). This version of "inextricably intertwined," however,

has limited application.   Because it is based on
Feldman, it is only relevant in the rare cases where it
is necessary to determine if the court has jurisdiction
to hear a claim after another claim has already been
found to be a forbidden de facto appeal.   As Noel
itself concedes, "[a]s a practical matter, the
'inextricably intertwined' test of Feldman is likely to
apply primarily in cases in which the state court both
promulgates and applies the rule at issue--that is, to
the category of cases in which the lower court has
acted in both a legislative and a judicial capacity."
341 F.3d at 1158.


### 3. Exxon's impact on the Rooker-Feldman doctrine

In Exxon, the unanimous Supreme Court denounced the
expansion of the Rooker-Feldman doctrine and expressly
limited the doctrine by "confin[ing it] to cases of the
kind from which the doctrine acquired its name."   544
U.S. at 284.   Cases are therefore subject to the

16

doctrine if: "[(1)] brought by state-court losers [(2)] complaining of injuries caused by state-court judgments [(3)] rendered before the district court proceedings commenced and [(4)] inviting district court review and rejection of those judgments."  Id.  The first and third elements are more procedural, while the second and fourth are more substantive in their opposition to the state-court judgment.  See Hoblock, 422 F.3d at 85. Lance v. Dennis, 546 U.S. 459, 466 (2006), decided less than one year after Exxon, clarified the first element by holding that the doctrine does not bar "actions by non-parties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment." Id. at  466.

With its narrow holding, Exxon rejects the two broadest methods previously used by the lower courts to apply Rooker-Feldman via the phrase "inextricably intertwined."  The interpretation that took the worst beating is the approach functionally conflating the

17

doctrine with res judicata by defining "inextricably intertwined" claims as those that had already been argued in state court. At first glance, this approach seems rational, as "both sets of principles define the respect one court owes to an earlier judgment." GASH, 995 F.2d at 728. But the Supreme Court explicitly threw out this interpretation, stating plainly that if a federal plaintiff presents a claim that does not seek to overturn a state-court judgment, "there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." Id. at 293. In case lower courts still failed to understand, Lance made it even simpler: "Rooker-Feldman is not simply preclusion by another name." 546 U.S. at 466.

After the res-judicata approach, the broadest pre-Exxon interpretation of "inextricably intertwined" found no jurisdiction "if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." Goodman, 259 F.3d at 1332

(emphasis added).   **Exxon** implicitly rejects this interpretation of the doctrine by quoting the <u>GASH</u> statement that, "If a federal plaintiff 'present[s] some independent claim, albeit one that denies a <u>legal conclusion</u> that a state court has reached in a case to which he was a party ..., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'"   544 U.S. at 293 (emphasis added) (quoting <u>GASH</u>, 995 F.2d at 728).

While the meaning of "legal conclusion" is not entirely clear, "it suggests that a plaintiff who seeks in federal court a result opposed to the one he achieved in state court does not, for that reason alone, run afoul of Rooker-Feldman."   <u>Hoblock</u>, 422 F.3d at 87.   The distinction is subtle, but it means that a federal court may hear claims about a state-court "legal conclusion"--even if the state courts have previously rejected that claim or if it would undermine the state-court judgment--in contrast to its utter prohibition from hearing claims that would vacate a

19

state-court judgment. This difference can be elucidated by considering Feldman. In that case, the Court concluded that the Rooker-Feldman doctrine did not prohibit federal-court jurisdiction for a constitutional challenge to a bar rule, even though the court's judgment that the rule was correctly applied to the plaintiffs would be severely undermined if the rule itself were found to be unconstitutional. Ultimately, whether the federal court may challenge a particular legal conclusion is properly an issue of preclusion, not jurisdiction.

By rejecting these two methods of applying the Rooker-Feldman doctrine, Exxon so thoroughly cut back the thicket surrounding the Rooker-Feldman doctrine that Justice Stevens, in his dissent in Lance v. Dennis, went so far as to characterize the Exxon opinion as having "finally interred" a doctrine that has "produced nothing but mischief for 23 years." 546 U.S. at 468. But the doctrine, narrower though it may be, is not through with us yet.

### 4. How to interpret "inextricably intertwined" after Exxon

While Exxon clearly limited the Rooker-Feldman doctrine, the Supreme Court's attempt to resolve differing interpretations among the circuits, 544 U.S. at 291, did not fare as well as might have been wished. Beyond the rejection of two methods of interpretation, as described above, the Court declined to clarify the meaning of "inextricably intertwined," the phrase responsible for "much of the confusion regarding the Rooker-Feldman doctrine." Bolden v. City of Topeka, 441 F.3d 1129, 1140 (10th Cir. 2006). Exxon uses the phrase three times but does so only to note that it appeared in Feldman and in the erroneous decision below, 544 U.S. at 286 & n.1; to the frustration of lower courts, Exxon "quotes Feldman's use of the phrase but does not otherwise explicate or employ it." Hoblock, 422 F.3d at 86. But, because the Rooker-Feldman doctrine did not apply in Exxon on procedural grounds--the plaintiff was not a lower court loser, nor

had the state suit come to judgment, see Exxon 544 U.S. at 293--perhaps the Court saw no need to clarify the meaning of "inextricably intertwined," which has more resonance for Exxon's two substantive requirements than for the two purely procedural ones.

The consequence of the Court's ignoring the phrase means that, after Exxon, lower courts do not know if they still must apply "inextricably applied" or how to do so. This court's analysis of the issue has no binding precedent to follow; as described previously, the Eleventh Circuit's pre-Exxon interpretation of the phrase cannot stand, nor has the Eleventh Circuit issued any published decisions since Exxon expressly addressing whether the phrase "inextricably applied" has continued viability and, if so, how.[5]   But, by reviewing decisions of other circuits, this court has

---

5. The Eleventh Circuit has recently applied the Rooker-Felder doctrine in two appeals, Nicholson v. Shafe, ___ F.3d ____, 2009 WL 385579 (11th Cir. 2009); Casale v. Tillman, ___ F.3d ____, 2009 WL 368301 (11th Cir. 2009), but in neither did the appellate court, either expressly or implicitly, address the issue of the continued viability of the phrase "inextricably applied."

determined that a careful analysis of <u>Exxon</u> reveals that the kerfuffle over "inextricably intertwined" has, in fact, largely been quieted.

While there are variations, the most common approach among the circuits seems to be variants of the Seventh Circuit's pre-<u>Exxon</u> opinion in <u>GASH Associates v. Village of Rosemont</u>, 995 F.2d 726 (7th Cir. 1993). As such, they reject the notion that "inextricably intertwined" has any meaning beyond the four elements enumerated in <u>Exxon</u>. In <u>Hoblock</u>, for example, the Second Circuit described <u>Exxon</u> as "par[ing] back the <u>Rooker</u>-<u>Feldman</u> doctrine to its core" by limiting "inextricably intertwined" claims to those that meet <u>Exxon</u>'s four requirements. 422 F.3d at 85. This definition means that "the phrase 'inextricably intertwined' has no independent content. It is simply a descriptive label attached to claims that meet the requirements outlined in <u>Exxon Mobil</u>." <u>Id</u>. <u>See also</u> <u>Davani v. Va. Dep't of Transp.</u>, 434 F.3d 712, 719 (4th Cir. 2006) ("Feldman's 'inextricably intertwined'

23

language does not create an additional legal test ...
but merely states a conclusion: if the state-court
loser seeks redress in the federal district court for
the injury caused by the state-court decision, his
federal claim is, by definition, 'inextricably
intertwined' with the state-court decision."); 
McCormick v. Braverman, 451 F.3d 382, 394-95 (6th Cir.
2006) ("[T]he phrase 'inextricably intertwined' only
describes the conclusion that a claim asserts an injury
whose source is the state court judgment."); Bolden v.
City of Topeka, 441 F.3d 1129, 1141 (10th Cir. 2006)
("[T]he term is not being used to expand the scope of
the Rooker bar beyond challenges to state-court
judgments."); TruServ Corp. v. Flegles, Inc., 419 F.3d
584, 591 (7th Cir. 2005) (claim was not "inextricably
intertwined" because the injury did not arise from the
prior state court lawsuit and because the federal court
would not need to set aside a state-court judgment in
order to find for the plaintiff).

In short, the alpha and omega for the doctrine is that the case must be "[(1)] brought by state-court losers [(2)] complaining of injuries caused by state-court judgments [(3)] rendered before the district court proceedings commenced and [(4)] inviting district court review and rejection of those judgments." Exxon, 544 U.S. at 284.

### 5. Application of the Rooker-Feldman doctrine to the Sophocleuses' claims

All that remains is to apply the Rooker-Feldman doctrine here. This case involves two state-court judgments--one for eviction and the other for condemnation and valuation--resulting from the parties' settlements. The Sophocleuses concede that the state court correctly evicted them from their property and do not challenge or discuss the eviction judgment. In the condemnation proceeding, the state court entered a judgment condemning the Sophocleuses' property for the public uses and purposes stated in the petition for

25

condemnation.  While the Sophocleuses do not directly challenge the judgment, since they do not seek the return of their land, it is implicated in that their claims rest on whether the land was actually put to public use.

Nevertheless, because the key substantive requirements from Exxon for the application of the Rooker-Feldman doctrine are not present, the Sophocleuses' federal suit is not barred under Rooker-Feldman based on the state-condemnation judgment, Exxon, 544 U.S. at 291-292.  The Sophocleuses' claims easily meet the two procedural requirements, since the federal action is brought by a state-court loser and the state-court judgment was rendered before the district-court proceedings began.[6]  But the Sophocleuses do not invite this federal court to 'review' and 'reject' the state judgment.  Indeed, they invite this court to honor the state judgment, and then some, that

_____

6.  The Sophocleuses technically settled, rather than lost, but the settlement involved the entry of an adverse judgment in the condemnation case.

is, by awarding them additional money because the defendants used their property for non-public purposes. This court could grant the Sophocleuses full relief without disturbing either of the state-court eviction and condemnation judgments.

Moreover, even if their federal litigation could be viewed as at odds with the state ligation because they seek additional relief (and particularly, as appears here, relief that was denied in state court), the Supreme Court has made clear that this court has jurisdiction and that state law should determine whether they should prevail under principles of preclusion. See Exxon, 544 U.S. at 293 ("If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party ..., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'") (quoting GASH, 995 F.2d at 728); Nicholson v. Shafe, ___ F.3d ____, _____, 2009 WL

27

385579, *6 (11th Cir. 2009) ("Rooker-Feldman does not prohibit a 'district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court.'") (quoting Exxon, 544 U.S. at 293); Hoblock, 422 F.3d at 87 ("a plaintiff who seeks in federal court a result opposed to the one he achieved in state court does not, for that reason alone, run afoul of Rooker-Feldman").

Accordingly, heeding the Supreme Court's admonition in Exxon that the Rooker-Feldman doctrine is "limited" and occupies "narrow ground," 544 U.S. at 284, 291, this court concludes that the doctrine does not apply in this case and that this court therefore has subject-matter jurisdiction to consider the Sophocleuses' claims.


## B. Preclusion

Since this court has jurisdiction to hear the Sophocleuses' claims, it must now consider the question

of whether such claims are precluded by the state-court proceedings.

Because using precise legal terminology is critical when discussing the preclusive effects of former adjudication, this court adopts the Supreme Court's definitional framework set out in <u>Migra v. Warren City School Dist. Bd. of Educ.</u>, 465 U.S. 75, 77 n.1 (1984): "The preclusive effects of former adjudication ... are referred to collectively ... as the doctrine of res judicata. Res judicata is often analyzed further to consist of two preclusion concepts: issue preclusion and claim preclusion. Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect is also referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of

merger and bar." (Internal quotations omitted); <u>see</u> <u>also</u> <u>Gjellum v. Birmingham</u>, 829 F.2d 1056, 1059 (11th Cir. 1987) (adopting <u>Migra</u> definitions of res judicata, issue preclusion, and claim preclusion). Because the prior judgment at issue was an Alabama-court judgment, this court must apply Alabama's law of preclusion. <u>See</u> <u>McDonald v. Hillsborough County School Bd.</u>, 821 F.2d 1563, 1565 (11th Cir. 1987); <u>Kachler v. Taylor</u>, 849 F. Supp. 1503, 1515-16 (M.D. Ala. 1994) (Thompson, J.).

Under Alabama law, the essential elements of res judicata are: "'(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both suits.' <u>Hughes</u> <u>v. Allenstein</u>, 514 So.2d 858 (Ala. 1987). ... If all of these elements are met, any claim that was or could have been adjudicated in the previous action is precluded." <u>N.A.A.C.P. v. Hunt</u>, 891 F.2d 1555, 1560 (11th Cir. 1990). Identity of parties concerns two sets of persons. The first set comprises "those

persons who were actual parties in the original action." Id. The second set of persons to whom res judicata applies comprises "those persons who are or were in privity with the parties to the original suit." Id. Privity exists "where the nonparty's interests were represented adequately by the party in the original suit." Id. Privity also exists "where a party to the original suit is 'so closely aligned to a nonparty's interest as to be his virtual representative.'" Id. at 1560-61 (quoting United Merchants & Mfrs. v. Sanders, 508 So.2d 689, 692 (Ala. 1987)).

The Sophocleuses have not challenged the first three elements listed above for claim preclusion, so the question of res judicata hangs on the fourth. Causes of action are considered identical if the legal theories and claims arise out of the same nucleus of operative fact. Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1356 (11th Cir. 1998); NAACF v. Hunt, 891 F.2d 1555, 1561 (11th Cir. 1990). A court, then,

31

examines "the factual issues that must be resolved in the second suit and compares them with the issues explored in the first case." <u>Pleming</u>, 142 F.3d at 1357.

Here, in the state-court condemnation proceeding the Sophocleuses alleged improper non-public use of the property in their amended appeal and pretrial contentions and thus are precluded from arguing it again here, as the basis for their claims in federal court.[7] In fact, they made the allegation twice: first in John Sophocleus's affidavit in the eviction action, and then again in the amended appeal of the

_____

7. The Sophocleuses attempt to avoid a finding that they have already raised this claim by trivializing their amendment and by arguing that Alabama law prohibits them from amending their complaint. In their own brief, for example, they mock their amended complaint by stating "[w]hy this document was filed is, simply, inexplicable. It is absolutely meaningless." Pls.' Resp. to State Defs.' Br. for Summary Judgment (Doc. No. 122) at 7 n.1. Their contention that they could not lawfully appeal is also without merit, as Alabama law provides for amendment of pleadings in an appeal of a condemnation proceeding, even where those amendments include the allegation of new facts. <u>Cloverleaf Land Co. v. State</u>, 163 So.2d 602, 604 (Ala. 1964).

condemnation action.[8]    State-law principles of
preclusion bar this federal case.[9]


                          ***


     Although this action is not barred by the Rooker-
Feldman doctrine, it is barred by the doctrine of res
judicata.    The motions for summary judgment will

_____

     8. This court reached essentially the same
conclusion in its decision on this case prior to its
remand, Sophocleus, 305 F. Supp.2d at 1246, 1250-51, and
nothing suggests that the facts have changed in the
meanwhile.

     9. To invoke collateral estoppel or issue preclusion
properly, a party must show three prerequisites: "(1) the
issue at stake must be identical to the one alleged in
the prior litigation; (2) the issue must have been
actually litigated in the prior litigation; and (3) the
determination of the issue in the prior litigation must
have been a critical and necessary part of the judgment
in that earlier action.  In addition, the party against
whom the earlier decision is asserted must have had a
full and fair opportunity to litigate the issue in the
earlier proceeding." Nobles v. Rural Cmty. Ins. Servs.,
303 F.Supp.2d 1292 (M.D. Ala. 2004) (Thompson, J.),
aff'd, 116 Fed.Appx. 253 (11th Cir. 2004) (table).  These
requirements are met here as well, for the issue in the
earlier state-court proceedings and the issue in the
current federal proceeding are one and the same: whether
the State of Alabama intended to, and did, put the
Sophocleuses' property to improper non-public use.

therefore be granted.  An appropriate judgment will be entered.

DONE, this the 12th day of March, 2009.


                          /s/ Myron H. Thompson
                     UNITED STATES DISTRICT JUDGE